```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------X
SHERRY FUNK, BRUCE SKLOVER, TAMAR
SKLOVER, LINDA SALLE, ELAINE MC MANUS,
JOY LORD ETAL, GISELLE ANTONELLI,
LOUIS GEORGETTI, KEVIN MC EACHERN,
TRACEY MC EACHERN, MICHAEL GERAGHTY,
KIM ANAYA, BARBARA ANAYA, JACQUELINE
CORNEY, RAYMOND CORNEY, MICHAEL
FIORE, NANCY FIORE, CHRISTINE
WILLIAMS, TERRENCE WILLIAMS, KERRY
HICKEY, ARTHUR LARSEN, LORRAINE
LARSEN, MICHAEL LIGHT, TARA ANN
LIGHT, JEAN BESSE, JR., ANNE BESSE,
JOSEPH BEISSEL, KATHLEEN BEISSEL,
GEORGE EBERT, KAREN EBERT, MARQUERITE
BEHETTE-HART, GENE HART, CHARLES
BALLSTRERI, MARIE BALLSTRERI, STEVEN
DIBLASIO, DONNA DIBLASIO, MARJORIE
DRENNAN, JOSEPH DRENNAN, CHRISTOPHER
MULDOON, COLOMBA MULDOON, MARY RODMAN,
JOSEPH CARLEY, MARGARET CARLEY, PETER
YANNELLO, JO-ANN YANELLO, RUDOLPH
RESTA, ANGELA RESTA, CARMINE SCHIRRIPA,
MARYELLEN FAHERTY, KATHLEEN WINTERS,
JOHN MATZEN, PATRICIA MATZEN, JACK
NACMIAS, JANE NACMIAS, EVELYN TWOHIG,
JACK FRANCHOCK, MICHAEL ROBERTSON,
KERRY ROBERTSON, MARY BENNETT, WILLIAM
HILBERER, ELIZABETH JORDAN, ELIZABETH
CARLSON, MICHAEL CARLSON, JAIME RESKER,
BRIAN BATTISTA, MICHAEL SCHRAMM, NOREEN
SCHRAMM, GERALDINE MARINO, FREDERICK
MARINO, JR., HELEN GRIECO, DONALD RYAN,
LINDA RYAN, VINCENT ESPOSITO, LAURIE
ESPOSITO, MAUREEN ESPOSITO, CARMINE
ESPOSITO, ESTELLE WEINSTEIN, ANDREW T.
HICKEY, MARY ELLEN HICKEY, JORGE
BIAGGINI, ROSALIND BIAGGINI, DESMOND
O'LEARY, ROSALIND O'LEARY, JAMES
O'SULLIVAN, MARY O'SULLIVAN, NOREEN R.
MULVANTERY, MARY K. COLLINS, THOMAS J.
MC CULLOCH, JOHN GONZALEZ, ANTHONY
HAYDEN, KATHERINE HAYDEN, LARRY WADE,
LEARY WADE, JOHN KERSHAW, S.B. LITTLEFIELD,
ROBERT DONNELLY, TODD A. GREENGUS, KIM F.
GREENGUS, ROBERT J. DAVAN, PATRICIA M.
DAVAN, MAUREEN RYAN, DENNIS RYAN,
DENISE J. TESORIERO, MICHAEL MC ELHATTON,
```

MEMORANDUM & ORDER
13-CV-5933(JS)(GRB)

THOMAS MC MAHON, BARBARA MC MAHON, ROBERT
AHERN, ANTHONY AMBROSECCHIO, KATHRYN
AMBROSECCHIO, ANDREW GEMMELL, JOHN J.
FITZGERALD, ALICE G. FITZGERALD, URSULA
ODIERNA, KATHLEEN CONWAY, LYNN GOODMAN,
RICHARD CANAVAN, PATRICK DUGAN, MARGARET
DUGAN, HENRY SAUTNER, MARJORIE SAUTNER,
HELEN DUKES, DAVID DUKES, JANET E. HURLEY,
LORNA MINOR, WILLIAM REID, JR., KATHLEEN
REID, ELIZABETH C. HEINLEIN, EDITH M.
HEINLEIN, KEVIN C. DOLAN, EILEEN DOLAN,
JOSEPY DOYLE, BARBARA DOYLE, ANTOINETTE M.
MC VICKER, JENNIFER A. MC HUGH, STEWART
RITWO, NANCY GAHLES-RITWO, SUZANNE
CARLTON, JAMES P. CARLTON, GARY J. WILSON,
JEAN M. WILSON, DORIS GRESSER, ANTOLIN
DUBOIS, MARK BUTIGIAN, MARILYN BUTIGIAN,
PATRICIA L. POWERS, FLORENCE CAHILL,
TERENCE CAHILL, BRIAN KELLEY, URSULA
KELLEY, BETTY CAGGIANO, CRAIG CAGGIANO,
DR. CHRISTIN MONTALBANO, JOANNE STEINMETZ,
TOMIKA FAREWELL, ANTHONY FAREWELL,
ADELINE C. CARLO, THOMAS J. DENVER,
BARBARA A. DENVER, ANTHONY S. EPPOLITO,
FRANCES EPPOLITO, JOHN J. CHECKETT,
JOYCE A. CHECKETT, SHANNI KARASANTI,
LIORR KARASANTI, MICHAEL NATALE, LILI
NATALE, ROBERT W. ROSE, JR., CATHERINE A.
ROSE, TONI ANN CARROLL, MAUREEN FOX,
JAMES FOX, DONNA L. O'NEILL, ANTHONY J.
O'NEILL, WILLIAM GENOESE, BARBARA
GENOESE, FRANCIS FITZPATRICK, JOSEPHINE
FITZPATRICK, MARION GUASTADISEGNI,
DOMENIC GUASTADISEGNI, KENNETH GELINEAU,
BERNADETTE GELINEAU, RONALD GIALANZE,
DEBRA-ANN GIALANZE, TANYA DELFINO,
THOMAS W. LIND, CATHERINE LIND,
DENNIS P. BRADY, SUSAN BRADY, ERIC
WEBER, CATHERINE WEBER, DOLORES FERRO,
MARK J. FERRO, FRANK J. TORNETTI,
BRIAN MURPHY, CATHERINE MURPHY, DAVID
MENTGES, PATRICIA MENTGES, MARY ELLEN
TOWEY, JOHN TOWEY, LOIS FAZZESE,
ANTHONY FAZZESE, SUZANNE DEGRECHIE,
EDWARD SCOTT, ROSEMARIE CANNONE,
PATRICIA CROWLEY, ROBERT CROWLEY,
CHRISTINA DOHERTY, GERALD SULLIVAN,
LORIEN COLLERAN, RICHARD COLLERAN, JR.,

2

CHRISTINE CHU, LAURA M. CONNOLLY,
ROBERT F. CONNOLLY, MICHAEL J. MITCHELL,
SUSAN MITCHELL, MARTIN J. AIN, INGRID
AIN, KEVIN BUCKLEY, JOSEPH FEDDERN,
BARBARA FEDDERN, PRAFULLA KOTHARI,
WILLIAM LAI, MARY LAI, SHEILA MC CARTHY,
DEREK MC CARTHY, DANIEL MC FADDEN,
PATRICIA MC FADDEN, TIMOTHY W. O'BRIEN,
SUSAN O'BRIEN, MARY PUMA, RUBY K.
SCHABERICH, SHEILA SCHABERICH, JOHN
WILLIS, GERALDINE VITORELLA, FRANCINE
MC MANUS, RAYMOND VANN, DIANE VANN,
DAISY M. REMIG, BERRIS TURNBULL,
MATTIE TURNBULL, CAMERON LIVINGSTONE,
PATRICIA LIVINGSTONE, ROBERT BADAMO,
ELLEN MC CARTHY, THOMAS F. CRONOLLY,
LOUISE M. CRONOLLY,

                    Plaintiffs,
          - against-

ALLSTATE INSURANCE COMPANY,

                    Defendant.
---------------------------------X
APPEARANCES
For Plaintiffs:    Sean Greenwood, Esq.
                   Gauthier Houghtaling & Williams
                   52 Duane Street, 7th Floor
                   New York, NY 10007

For Defendant:     No appearances.

SEYBERT, District Judge:

          On October 28, 2013, 217 plaintiffs (collectively,
"Plaintiffs") commenced this action against defendant Allstate
Insurance Company ("Defendant") pursuant to this Court's diversity
jurisdiction under 28 U.S.C. §§ 1332(a) and 1441, each seeking to
recover: (1) his or her actual damages resulting from Defendant's
purported breach of contract, i.e., its failure to pay the full
amount of each Plaintiff's respective claims under an insurance

                              3

policy issued to him or her by Defendant; and (2) compensatory, consequential, punitive and/or treble damages for Defendant's purported breach of the implied covenant of good faith and fair dealing, fraudulent misrepresentation and inducement, and violations of Sections 349 and 350 of the New York General Business Law.  For the reasons set forth below, the breach of the implied covenant of good faith and fair dealing, fraudulent misrepresentation and inducement, and New York General Business Law claims are <u>sua</u> <u>sponte</u> DISMISSED and the remaining claims of all Plaintiffs except the first-named Plaintiff, Sherry Funk ("Funk"), are <u>sua</u> <u>sponte</u> SEVERED from this action pursuant to Rules 20 and 21 of the Federal Rules of Civil Procedure and DISMISSED WITHOUT PREJUDICE to commencing separate actions for each insurance policy issued by Defendant.

<u>BACKGROUND</u>[1]

Plaintiffs separately own real property in this judicial district and separately purchased from Defendant an insurance policy to cover their respective properties.  (Compl. ¶¶ 1, 4, 6.) The Complaint alleges, <u>inter</u> <u>alia</u>: (1) that Defendant issued an individual property insurance policy to each Plaintiff covering losses to his or her dwellings and personal property (Compl. ¶¶ 5-6); (2) that each Plaintiff paid all of the premiums on his or her

---

[1] The following facts are drawn from the Complaint and are presumed to be true for the purposes of this Memorandum and Order.

policy (Compl. ¶ 6); (3) that as a result of "Superstorm Sandy" ("the Storm"), "each Plaintiff sustained substantial losses and wind damage to their respective properties" (Compl. ¶¶ 7-8); (4) that each Plaintiff reported and properly submitted a claim under his or her policy to Defendant (Compl. ¶ 9); (6) that Defendant "improperly adjusted and denied at least a portion of each Plaintiffs' claims without an adequate investigation" (Compl. ¶ 10), "unjustifiably refused to perform its obligations under the property insurance Policies and wrongfully denied payment in the full amount of each Plaintiff's claims" (Compl. ¶ 11); (7) that Plaintiffs retained independent experts and consultants to evaluate the damages sustained to their respective properties and "thoroughly documented" and submitted their losses to Defendant for review (Compl. ¶ 12); and (8) that as a result of Defendant's failure to pay the full amount of each Plaintiff's claim, each Plaintiff has been unable "to properly and/or completely repair the damages to their properties," or the repairs were delayed, "caus[ing] additional damages to Plaintiffs . . . ." (Compl. ¶ 13).

Based on the allegations of the Complaint, Plaintiffs' claims share very little in common. Plaintiffs do not allege that the policies are identical, nor do they explain the specific instances of Defendant's denial or limitation of coverage. Moreover, Plaintiffs' respective properties are in various locations. (Compl. ¶ 6.)

DISCUSSION

Plaintiffs commenced this diversity action against Defendant asserting four causes of action against Defendant for: (1) breach of contract, with each Plaintiff seeking to recover the actual damages he or she sustained as a result of Defendant's failure to pay the full amount of his or her claim under his or her respective insurance policy (Compl. ¶¶ 14-18); (2) fraudulent misrepresentation and inducement, with each Plaintiff seeking compensatory and consequential damages and costs, and punitive damages against Defendant's alleged fraudulent inducement because Defendant allegedly fraudulently induced and misled Plaintiffs and knowingly misrepresented property coverage and claims services (Compl. ¶¶ 19-25); (3) breach of the implied covenant of good faith and fair dealing, with each Plaintiff seeking compensatory, consequential, and punitive damages against Defendant based upon, inter alia, Defendant's purported denial of his or her claim, misrepresentation that his or her claim was not covered under his or her respective insurance policy, unreasonable investigation of his or her claim and "refus[al] to accept the facts and documentation supporting Plaintiffs' claims . . ." (Compl. ¶¶ 26-35); and (4) violations of Sections 349 and 350 of the New York General Business Law, with each Plaintiff seeking compensatory, consequential, and treble damages based upon Defendant's purported "deceptive acts or practices in conducting the business of

6

insurance and the furnishing of insurance services in New York
. . .” (Compl. ¶¶ 36-39).

I.    Fraudulent Misrepresentation and Inducement

        In their second claim for relief, Plaintiffs allege,
inter alia: (1) that “prior to issuing [each Plaintiff’s] Polic[y],
[Defendant] fraudulently misrepresented coverage . . . (Compl.
¶ 21); (2) that Defendant “made misrepresentations about its
fairness and willingness to pay the full amount of claims . . .
when its actual intention and practice was to unreasonably deny
payment” (Compl. ¶ 21); (3) that Defendant “fraudulently induced
and misled Plaintiffs by promising to pay claims in good faith and
according to the Policy terms and conditions when [it] had no
intention to do so” in order to “further its own economic
interests” (Compl. ¶ 22); and (4) that Defendant “knowingly
misrepresented property coverage and claims services” (Compl.
¶ 23).

        To state a claim for fraudulent inducement under New York
law, a plaintiff must allege that “‘(1) the defendant made a
material false representation, (2) the defendant intended to
defraud the plaintiff thereby, (3) the plaintiff reasonably relied
upon the representation, and (4) the plaintiff suffered damage as
a result of such reliance.’” Eternity Global Master Fund Ltd. v.
Morgan Guar. Trust Co. of N.Y., 375 F.3d 168, 186-87 (2d Cir. 2004)
(quoting Banque Arabe et Internationale D’Investissement v. Md.

7

Nat'l Bank, 57 F.3d 146, 153 (2d Cir. 1995)).  However, false statements, even if intentionally made, merely indicating an intent to perform under a contract are "not sufficient to support a claim of fraud under New York law." Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc., 98 F.3d 13, 19-20 (2d Cir. 1996); see also Merrill Lynch & Co., Inc. v. Allegheny Energy, Inc., 500 F.3d 171, 184 (2d Cir. 2007) ("New York distinguishes between a promissory statement of what will be done in the future that gives rise only to a breach of contract cause of action and a misrepresentation of a present fact that gives rise to a separate cause of action for fraudulent inducement.").

Thus, to state a claim for fraudulent inducement in a case that arises from a breach of contract, "a plaintiff must either: (i) demonstrate a legal duty separate from the duty to perform under the contract; or (ii) demonstrate a fraudulent misrepresentation collateral or extraneous to the contract; or (iii) seek special damages that are caused by the misrepresentation and unrecoverable as contract damages." Bridgestone/Firestone, 98 F.3d at 20; see also Wall v. CSX Transp., Inc., 471 F.3d 410, 416 (2d Cir. 2006) ("New York law specifically recognizes causes of action for fraud in the inducement when the misrepresentation is collateral to the contract it induced.").

District courts have inherent authority to dismiss meritless claims sua sponte, even if the plaintiffs have paid the

filing fee.   See Fitzgerald v. First E. Seventh St. Tenants Corp., 221 F.3d 362, 363-64 (2d Cir. 2000) (holding that the district court has the power to dismiss a frivolous complaint sua sponte even if the plaintiff has paid the filing fee); see also Zahl v. Kosovsky, 471 F. App'x 34, 37 (2d Cir. 2012), cert. denied, 133 S. Ct. 1460, 185 L. Ed. 2d 363 (2013) ("A district court has inherent authority to dismiss meritless claims sua sponte, even where a plaintiff has paid the filing fee.").

The Complaint does not allege that Defendant owed Plaintiffs a legal duty separate from its duty to perform under the respective insurance policies.   In fact, Plaintiffs allege that Defendant owed a duty "to investigate and pay claims in good faith and according to the Policy terms and conditions" (Compl. ¶ 20) and the only misrepresentation alleged relates to Defendant's future obligations under the policies.   Thus, it is not collateral or extraneous to the contract and Plaintiffs do not seek special damages.   Accordingly, Plaintiffs' fraudulent misrepresentation and inducement claims are sua sponte DISMISSED as meritless.

II.   Breach of the Implied Covenant of Good Faith and Fair Dealing Claims

The third cause of action in the Complaint alleges, inter alia: (1) that "[b]y wrongfully denying payments to Plaintiffs, [Defendant] breached the Policies, causing damage, . . ." (Compl. ¶ 29); (2) that Defendant "breached or will breach its duty to deal fairly and in good faith to the extent that it has or will engage

9

in conduct calculated to further its own economic interests at the expense of Plaintiffs" (Compl. ¶ 30); (3) that Defendant "breached its duty to Plaintiffs" by [(a)] "misrepresenting . . . that Plaintiffs' claims were not covered under the Policies even though the damage resulted from a covered cause of loss" [(b)] unreasonably investigating Plaintiffs' claims; and [(c)] "refusing to accept the facts and documentation supporting Plaintiffs' claims prepared by Plaintiffs and by experts on their behalf" (Compl. ¶ 31); (4) that Defendant's "conduct constitutes a pattern of unfair dealing and unfair settlement practices directed at Plaintiffs and the public at large" (Compl. ¶ 32); (5) that Defendant "had economic incentive to disregard its obligation to act in good faith and deal fairly with its policyholders, including Plaintiffs, regarding large-dollar claims" (Compl. ¶ 33); and (6) that Defendant "has breached, or will breach, the duties of good faith and fair dealing owed to Plaintiffs, and to the public at large, by other acts and omissions of which Plaintiffs are presently unaware" (Compl. ¶ 34).  Plaintiffs seek "compensatory and consequential damages and costs and . . . punitive damages, in an amount [each] Plaintiff may prove at trial . . ., [and] all costs associated with recovering, repairing and/or replacing the damaged property . . . ." (Compl. ¶ 35.)

        "Under New York law, parties to an express contract are bound by an implied duty of good faith, but breach of that duty is

merely a breach of the underlying contract." <u>Harris v. Provident Life & Accident Ins. Co.</u>, 310 F.3d 73, 80 (2d Cir. 2002) (quoting <u>Fasolino Foods Co. v. Banca Nazionale del Lavoro</u>, 961 F.2d 1052, 1056 (2d Cir. 1992)); <u>see also</u> <u>Fishoff v. Coty Inc.</u>, 634 F.3d 647, 653 (2d Cir. 2011) ("A breach of the duty of good faith and fair dealing is considered a breach of contract.")[2] "New York law . . . does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of

---

[2] By pleading a claim under New York law, <u>i.e.</u>, Plaintiffs' fourth cause of action alleging violations of Sections 349 and 350 of the New York General Business Law, Plaintiffs impliedly concede that New York law applies to this case.  In addition, since jurisdiction in this case is premised upon diversity of citizenship, the choice-of-law rules of the state in which this Court sits--<u>i.e.</u>, New York--are applied.  <u>See</u> <u>Forest Park Pictures v. Universal Television Network, Inc.</u>, 683 F.3d 424, 433 (2d Cir. 2012) ("A federal court sitting in diversity jurisdiction applies the choice of law rules of the forum state.").  With respect to tort claims, "[i]n New York, 'the relevant analytical approach to choice of law in tort actions' is 'interest analysis.'"  <u>Lazard Freres & Co. v. Protective Life Ins. Co.</u>, 108 F.3d 1531, 1539 n.5 (2d Cir. 1997) (quoting <u>Schultz v. Boy Scouts</u>, 65 N.Y.2d 189, 491 N.Y.S.2d 90, 95, 480 N.E.2d 679, 684 (1985)); <u>see also</u> <u>White Plains Coat & Apron Co., Inc. v. Cintas Corp.</u>, 460 F.3d 281, 284 (2d Cir. 2006).  Under the "interest analysis," "the law of the jurisdiction having the greatest interest in the litigation will be applied."  <u>Id.</u> (quoting <u>Schultz</u>, 65 N.Y.2d 189, 491 N.Y.S.2d at 95).  "If conflicting conduct-regulating laws are at issue, the law of the jurisdiction where the tort occurred will generally apply because that jurisdiction has the greatest interest in regulating behavior within its borders."  <u>White Plains Coat</u>, 460 F.3d at 284 (quoting <u>Cooney v. Osgood Mach., Inc.</u>, 81 N.Y.2d 66, 72, 595 N.Y.S.2d 919, 612 N.E.2d 277 (1993)).  Since, <u>inter alia</u>, all Plaintiffs and their property are located in New York and all the damages were suffered in New York, New York clearly has the greater interest in regulating the conduct in question. Accordingly, New York law applies to Plaintiffs' tort claim for breach of the implied covenant of good faith and fair dealing.

contract claim, based upon the same facts, is also pled." <u>Harris</u>, 310 F.3d at 81; <u>see also</u> <u>Fleisher v. Phoenix Life Ins. Co.</u>, 858 F. Supp. 2d 290, 299 (S.D.N.Y. 2012) ("To avoid redundancy, [c]laims of breach of the implied covenant [of good faith and fair dealing] must be premised on a different set of facts from those underlying a claim for breach of contract." (internal quotation marks and citations omitted).)  "Therefore, when a complaint alleges both a breach of contract and a breach of the implied covenant of good faith and fair dealing based on the same facts, the latter claim should be dismissed as redundant." <u>Cruz v. FXDirectDealer, LLC (FXDD)</u>, 720 F.3d 115, 125 (2d Cir. 2013). Since Plaintiffs' claims for breach of the implied covenant of good faith and fair dealing and breach of contract rest upon the same alleged conduct by Defendant, the breach of the implied covenant of good faith and fair dealing cause of action is <u>sua</u> <u>sponte</u> DISMISSED as redundant.

Nor does the Complaint state a claim for bad faith denial of coverage, which requires the following:

> (1) defendant's conduct must be actionable as an independent tort; (2) the tortious conduct must be of [an] egregious nature. . .; (3) the egregious conduct must be directed to plaintiff; and (4) it must be part of a pattern directed at the public generally.

<u>Sichel v. Unum Provident Corp.</u>, 230 F. Supp. 2d 325, 328 (S.D.N.Y. 2002) (quoting <u>N.Y. Univ. v. Cont'l Ins. Co.</u>, 87 N.Y.2d 308, 316, 639 N.Y.S.2d 283, 662 N.E.2d 763 (1995) (alterations in original)); <u>see also</u> <u>Dekel v. Unum Provident Corp.</u>, No. 04-CV-0413, 2007 WL

12

812986, at *2 (E.D.N.Y. Mar. 14, 2007) (holding that a claim that an insurer committed a tortious act through the bad faith denial of a plaintiff's insurance claim is not cognizable under New York law).   "Where a lawsuit has its genesis in the contractual relationship between the parties, the threshold task for a court . . . is to identify a tort independent of the contract."  N.Y. Univ., 87 N.Y.2d at 316, 639 N.Y.S.2d 283.  Since Plaintiffs do not allege a tort independent of their respective contract with Defendant, i.e., that Defendant owed them a duty of care distinct from its contractual obligations or engaged in tortious conduct separate and apart from its failure to fulfill its contractual obligations, see id., the Complaint fails to state a claim for bad faith denial of coverage.[3]

III.  New York General Business Law Claims

        The fourth cause of action in the Complaint alleges, inter alia, that Defendant violated Sections 349 and 350 of the New York General Business Law by "engaging in deceptive acts or practices in conducting the business of insurance and the furnishing of insurance services in New York as described in the facts and allegations set forth in the paragraphs above."  (Compl. ¶ 38.)

        Section 349(a) of the New York General Business Law

---

[3] The Court makes no determination at this stage of the proceedings as to the viability of a claim for consequential damages based on alleged bad faith.

prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in [New York]." Section 349(h) of the New York General Business Law provides, in relevant part, that:

> any person who has been injured by reason of any violation of this section may bring . . . an action to recover his actual damages or fifty dollars, whichever is greater . . . . The court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages up to one thousand dollars, if the court finds the defendant willfully or knowingly violated this section . . . .

Section 350 of the New York General Business Law prohibits "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in [New York]." "The standard for recovery under General Business Law § 350, while specific to false advertising, is otherwise identical to section 349[,]" Oscar v. BMW of N. Am., LLC, 274 F.R.D. 498, 512 (S.D.N.Y. 2011) (quoting Goshen v. Mut. Life Ins. Co., 98 N.Y.2d 314, 746 N.Y.S.2d 858, 774 N.E.2d 1190, 1195 n.1 (2002)), with the exception that Section 350, unlike Section 349, requires a plaintiff to also "demonstrate reliance on the allegedly false advertising." Leider v. Ralfe, 387 F. Supp. 2d 283, 292 (S.D.N.Y. 2005).

"To state a claim under § 349, a plaintiff must allege: (1) the act or practice was consumer-oriented; (2) the act or practice was misleading in a material respect; and (3) the

14

plaintiff was injured as a result." Spagnola v. Chubb Corp., 574 F.3d 64, 74 (2d Cir. 2009). Thus, in order to state a claim under either Section 349 or Section 350, a plaintiff must allege actual injury. See Ritani, LLC v. Aghjayan, 880 F. Supp. 2d 425, 449 (S.D.N.Y. 2012).

"[A]lthough a monetary loss is a sufficient injury to satisfy the requirement under § 349, that loss must be independent of the loss caused by the alleged breach of contract." Spagnola, 574 F.3d at 74. Plaintiffs do not allege any specific conduct by Defendant that is purportedly deceptive. Rather, Plaintiffs expressly refer to the "facts and allegations" set forth in the preceding paragraphs of the Complaint to be the deceptive acts and practices in which defendant purportedly engaged. "[T]wo claims predicated on the same conduct are likely to involve similar injury." Fleisher, 858 F. Supp. 2d at 305. Indeed, Plaintiffs do not allege any loss allegedly sustained by them as a result of Defendant's allegedly deceptive acts, practices, or advertisement much less one that is independent of the loss caused by Defendant's purported breach of contract. Since Plaintiffs have not alleged an actual or cognizable injury, their fourth cause of action, alleging violations of Sections 349 and 350 of the New York General Business Law, is sua sponte DISMISSED for failure to state a claim.

IV.  Permissive Joinder of Plaintiffs

Rule 20(a)(1) permits the joinder of multiple plaintiffs

in an action if: "(A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all plaintiffs will arise in the action." FED. R. CIV. P. 20(a)(1). These elements are preconditions and both must be met for joinder to be proper. Deskovic v. City of Peekskill, 673 F. Supp. 2d 154, 159 (S.D.N.Y. 2009) ("As is clear from the plain language of Rule [the Rule], both criteria must be met for joinder to be proper."). While "[t]he requirements of Fed. R. Civ. P. 20(a) are to be interpreted liberally to enable the court to promote judicial economy by permitting all reasonably related claims for relief by or against different parties to be tried in a single proceeding, the requirements of the rule still must be met and constrain the Court's discretion." Kalie v. Bank of Am. Corp., --- F.R.D. ----, 2013 WL 4044951, at *3 (S.D.N.Y. Aug. 9, 2013) (alteration in original) (internal quotation marks and citation omitted). "If a court concludes that [parties] have been improperly joined under Rule 20, it has broad discretion under Rule 21 to sever [those] parties . . . from the action." Id.

In determining whether claims arise out of the same "transaction" or "occurrence" under Rule 20(a), "courts are to look to the logical relationship between the claims and determine 'whether the essential facts of the various claims are so logically

16

connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit.'" Id. (quoting United States v Aquavella, 615 F.2d 12, 22 (2d Cir. 1979)).  Plaintiffs bear the burden of demonstrating that joinder is proper under Rule 20(a).  Deskovic, 673 F. Supp. 2d at 159.

        Here, Plaintiffs' claims do not arise out of the same transaction or occurrence.  Courts in this District have recently applied the standards set forth above to almost identical lawsuits seeking insurance coverage for property damage caused by Superstorm Sandy and have summarily held that joinder is not appropriate. See, e.g., Dante v. Nat'l Flood Ins. Program, No. 13-CV-6207, 2013 WL 6157182, at *2 (E.D.N.Y. Nov. 22, 2013) (collecting similar cases from the Eastern District of Louisiana and the Southern District of Mississippi denying joinder of insurance claims related to property damage caused by Hurricane Katrina); Baiardi v. The Standard Fire Ins. Co., No. 13-CV-5912, 2013 WL 6157231, at *2-3 (E.D.N.Y. Nov. 21, 2013).  As these courts recognized, despite the fact that a single natural disaster, Superstorm Sandy, caused the damage to Plaintiffs' properties, Plaintiffs' claims do not arise out of the same transaction or occurrence because "[t]he claims involve entirely different factual and legal issues, including each property's respective condition and location before the storm, the value of the properties, and the extent of damage sustained." Dante, 2013 WL 6157182, at *2 (quoting Sucherman v. Metro. Prop. &

Cas. Ins. Co., Nos. 06-CV-8765, 05-CV-6456, 2007 WL 1484067, at *2
(E.D. La. May 21, 2007)).   Thus, with respect to damages,
Plaintiffs' individual claims undoubtedly will require different
evidence relating to the cause, and extent, of the loss.
Plaintiffs' individual claims also may require particularized
evidence on the issue of whether the policies actually provide
coverage  for Plaintiffs' claims because Plaintiffs purchased
separate insurance policies and Defendants may have different
reasons for denying and/or limiting payment for Plaintiffs'
individual claims.

As far as the Court can tell from the Complaint here, the
only material commonalities between Plaintiffs' claims are that
Plaintiffs' properties suffered damages caused by the same storm
and that Plaintiffs present similar legal theories against a common
defendant.   However, the mere presence of a common defendant and
"common questions of law or fact does not satisfy the same
transaction or occurrence requirement."   Id. at *3 (holding that
plaintiffs' separate insurance claims for damages caused by
Superstorm Sandy did not arise out of the same transaction or
occurrence because plaintiffs "failed to explain why their
individual claims should be joined other than that they share two
common facts--that they were brought about by Hurricane Sandy and
brought against [the same defendant]--and may raise similar
theories of law") (quoting McNaughton v. Merck & Co., No. 04-CV-

18

8297, 2004 WL 5180726, at *2 (S.D.N.Y. Dec. 17, 2004)); see Abraham v. Am. Home Mortg. Servicing, Inc., --- F. Supp. 2d ----, 2013 WL 2285205, at *4 (E.D.N.Y. May 23, 2013) (holding that plaintiffs' "separate mortgage transactions d[id] not constitute a single transaction or occurrence" and stating that "even claims by plaintiffs who engaged in separate loan transactions by the same lender cannot be joined in a single action").

With no common transaction or occurrence among Plaintiffs' claims, the Court therefore finds that Plaintiffs' claims are not properly joined under Rule 20(a). Accordingly, the remaining claims of all Plaintiffs except the first-named Plaintiff Sherry Funk are sua sponte SEVERED from this action and are DISMISSED WITHOUT PREJUDICE to commencing a separate action for claims related to his or her insurance policy. See Kalie, 2013 WL 4044951, at *6 (holding that where there is "no common transaction or occurrence, severance and dismissal of the misjoined claims is mandatory")

V.    Severance Under Rule 21

Finally, the Court notes that, even if the presence of common defendants or a single natural disaster were sufficient to satisfy Rule 20(a), the Court would reach the same result in exercising its discretion under Rule 21 of the Federal Rules of Civil Procedure.

Rule 21 provides, in relevant part, that "[o]n motion or

on its own, the court may at any time, on just terms, add or drop a party . . . [and] sever any claim against any party." FED. R. CIV. P. 21.  In deciding whether to sever a claim under Rule 21, courts generally consider, in addition to the preconditions set forth in Rule 20(a), "[1] whether settlement of the claims or judicial economy would be facilitated; [2] whether prejudice would be avoided if severance were granted; and [3] whether different witnesses and documentary proof are required for the separate claims."  Crown Cork & Seal Co., Inc. Master Retirement Trust v. Credit Suisse First Boston Corp., 288 F.R.D. 331, 333 (S.D.N.Y. 2013) (quoting Erausquin v. Notz, Stucki Mgmt. (Bermuda) Ltd., 806 F. Supp. 2d 712, 720 (S.D.N.Y. 2011)).  "A court should consider whether severance will 'serve the ends of justice and further the prompt and efficient disposition of litigation.'"  Crown Cork, 288 F.R.D. at 332 (quoting T.S.I. 27, Inc. v. Berman Enters., Inc., 115 F.R.D. 252, 254 (S.D.N.Y. 1987)); see also In re Ski Train Fire in Kaprun, Austria, on November 11, 2004, 224 F.R.D. 543, 546 (S.D.N.Y. 2004).

Here, joinder of Plaintiffs' claims involving separate insurance policies does not serve the interest of judicial economy. There will be little, if any, overlapping discovery and Plaintiffs' individual breach of contract claims will require distinct witnesses and documentary proof.  See Boston Post Rd. Med. Imaging, P.C. v. Allstate Ins. Co., No 03-CV-3923, 2004 WL 1586429, at *2

(S.D.N.Y. July 15, 2004) (severing breach of insurance policy claims even though policies were identical because joinder would not serve the interests of judicial economy or efficiency). Furthermore, settlement of the claims is likely to be facilitated if the claims relating to separate insurance policies are litigated separately. <u>See</u> <u>Adams v U.S. Bank, NA</u>, No. 12-CV-4640, 2013 WL 5437060, at * 4 (E.D.N.Y. Sept. 27, 2013). In addition, "[a] joint trial could lead to confusion of the jury and thereby prejudice defendants." <u>Kalie</u>, 2013 WL 4044951, at * 6 (internal quotation marks and citation omitted). Thus, for these reasons, the Court also finds that the Rule 21 factors require severance.

<u>CONCLUSION</u>

For the reasons stated herein, Plaintiffs' second, third, and fourth causes of action are <u>sua</u> <u>sponte</u> DISMISSED and the remaining claims by Plaintiffs other than Funk are <u>sua</u> <u>sponte</u> SEVERED pursuant to Rules 20 and 21 of the Federal Rules of Civil Procedure and are DISMISSED WITHOUT PREJUDICE to commencing separate actions for each insurance policy issued by Defendant.


SO ORDERED.


/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: December   13  , 2013
       Central Islip, New York



21